UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| THOMAS T. NAPOLITANO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00160-JAW |
| | ) | |
| GREEN TREE SERVICING, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS**

Thomas and Lisa Napolitano claim that Green Tree Servicing, LLC committed a number of violations of law when, although they were current on their modified loan, it treated them as delinquent, broke into their South Portland, Maine home, changed the door locks, winterized the home, dismantled a basement sump pump and allowed a previously dry basement to flood, and caused a persistent mold problem. Green Tree Servicing, LLC has moved to dismiss the Napolitanos' Complaint, claiming that they have failed to state claims upon which relief can be granted. The Court disagrees and denies Green Tree's motion.

## I. BACKGROUND

### A. Procedural History

On April 9, 2015, Thomas T. and Lisa M. Napolitano (Napolitanos or Plaintiffs) filed suit in Cumberland County Superior Court for the state of Maine against Green Tree Servicing, LLC (Green Tree) and Safeguard Properties, LLC (Safeguard),

asserting a series of alleged violations of law arising out of the servicing of their residential mortgage. *Notice of Removal* Attach. 1 *Compl.* (ECF No. 1) (*Compl.*); *State Ct. Record* Attach. 1 *State Ct. Docket Record* (ECF No. 7). On May 1, 2015, Green Tree filed a Notice of Removal in this Court based on subject matter jurisdiction. *Notice of Removal* (ECF No. 1). On May 5, 2015, before the state court records were submitted to this Court, Safeguard answered the Complaint. *State Ct. Record* Attach. 9 *Answer and Additional Defenses* (ECF No. 7). On May 11, 2015, Green Tree moved to dismiss the Complaint on the ground that it failed to state a claim upon which relief could be granted. *Def. Green Tree Servicing LLC's Mot. to Dismiss* (ECF No. 8) (*Def.'s Mot.*). On June 8, 2015, the Napolitanos filed their opposition to the motion. *Pls.' Opp'n to Green Tree Servicing, LLC's Mot. to Dismiss* (ECF No. 11) (*Pls.' Opp'n*). Green Tree did not file a reply.

**B.    The Complaint[1]**

The Napolitanos state that this case arises out of a "mortgage transaction secured by the Plaintiffs' former residence, located at 195 School Street, South Portland, Cumberland County, Maine." *Compl.* ¶ 4. They allege that Green Tree is a mortgage servicer and Safeguard was Green Tree's contract agent and that the case involves "deceptive and unfair property management and asset preservation practices." *Id.* ¶ 5. The Plaintiffs acknowledge that they were delinquent on a mortgage loan obligation secured by the 195 School Street residence. *Id.* ¶ 6. They

---

[1]    In considering a motion to dismiss, a court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Waterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). *See also Town of Barnstable v. O'Connor*, 786 F.3d 130, 141 n.12 (1st Cir. 2015) (discussing *Waterson*).

say that Bank of America, N.A. (BOA) was their mortgage lender, but upon their default BOA assigned its right to foreclose the mortgage and otherwise collect on the debt to Green Tree, BOA's servicing agent. *Id.* ¶ 7. The Plaintiffs allege that no foreclosure proceeding was instituted in a Maine court. *Id.* The Plaintiffs say that they were "able to rescue their home from foreclosure by modifying the terms of their mortgage loan." *Id.* ¶ 8.

The Plaintiffs claim that they "ultimately entered into a 'Fannie Mae Loan Modification' that they signed on September 29, 2013 with [BOA], although the rights to service the Plaintiffs' mortgage remained with Green Tree as of the date of this Complaint, as evidence [sic] by an Assignment of Mortgage dated August 19, 2013 and recorded in the Cumberland County Registry [o]f Deeds at Book 31370, Page 990." *Id.* ¶ 9. They allege that "[i]n accordance with the Modification Agreement and in accordance with negotiations concluded prior to that Agreement, the Plaintiffs were required to comply with a trial period modification, which they successfully completed in August, 2013." *Id.* ¶ 10. The Plaintiffs say they were "granted permanent loan modification status in October 2013 although [BOA], through its nominee, the Mortgage Electronic Registration Systems, Inc., signed the Modification Agreement on March 18, 2014." *Id.* ¶ 11. They maintain that "[s]ince the time . . . they were offered and agreed to a permanent loan modification to the present, the Plaintiffs complied with all material[] terms and conditions of their loan obligations," specifically including paying "all mortgage loan installments when due, . . . taxes when due and kept their home adequately insured." *Id.* ¶¶ 12-13.

3

Regardless of their compliance with the modification terms, the Plaintiffs allege that Green Tree "continued to treat the Plaintiffs as they were delinquent on their loan obligations by sending notices of default, contacting the Plaintiffs to determine their intentions in connection with the claimed 'delinquency' and offering the prospects of accepting a deed in lieu of foreclosure for their South Portland home" and that Green Tree's "efforts have continued through June and July, 2014." *Id.* ¶ 14. The Plaintiffs believe that Green Tree and Safeguard "consider the Plaintiffs to be delinquent in their mortgage loan obligations as of the date of this Complaint, although no foreclosure action has yet to be instituted." *Id.* ¶ 15.

The Plaintiffs assert that Safeguard entered into various contracts with Green Tree to provide property inspection and preservation services for properties whose owners were delinquent or had defaulted on their mortgages. *Id.* ¶ 16. However, they claim that "Safeguard's involvement with residential property begins only if a homeowner become[s] delinquent or defaults on a mortgage" and Safeguard then becomes "responsible for performing property management and preservation services on the home." *Id.* ¶¶ 17-18. When Safeguard becomes involved, it "instructs [one] of its subcontractors to inspect the property to determine its occupancy status" and once Safeguard deems the property vacant, it then "instructs its subcontractors to secure the property by boarding up the doorway, turning off the water and winterizing the home, and placing lockboxes or padlocks on the doors." *Id.* ¶¶ 19-20. The Plaintiffs say that "[e]ven though [they] complied with their modified loan obligations, Green

4

Tree deployed Safeguard's services acting as though it were a legally-appointed receiver of the Plaintiffs' home." *Id.* ¶ 23.

In October, 2013, Plaintiffs say they relocated to Massachusetts for better job prospects but continued to own their South Portland home. *Id.* ¶ 21. They say they listed their home for sale with a local realtor and employed a caretaker to look after their home. *Id.* They also say that the realtor routinely inspected the home. *Id.* From October, 2013 onward, the Plaintiffs say that they snowplowed their driveway, continued to pay property taxes, and performed home improvements to enhance its marketability. *Id.* They maintain "in no uncertain terms" that they "did not abandon their South Portland home." *Id.* ¶ 22.

In December 2013, the pipes in the South Portland home froze, causing major damage. *Id.* ¶ 24. While the Plaintiffs were repairing the damage to their home, Green Tree, they say, "broke into the Plaintiffs' home, changed the door locks, 'winterized' the home, dismantled a basement sump pump and allowed a previously dry basement to flood." *Id.* They allege that neither "Green Tree nor Safeguard relied on any legal process such as a receivership or injunction as a precursor to taking such drastic measures." *Id.* ¶ 27. Instead, the Plaintiffs say, Green Tree and Safeguard "resorted to unauthorized self-help." *Id.* ¶ 28.

The Plaintiffs say that the "water damaged caused by Green Tree and Safeguard's conduct has resulted in a mold problem in the home." *Id.* ¶ 24. The Plaintiffs state that they were "forced to discard their dishwasher and washing machine as a result of Green Tree's and Safeguard's unauthorized break-in." *Id.* ¶

25. They say their home is now "basically a mess, preventing Plaintiffs' broker from selling the home and jeopardizing the Plaintiffs' financial equity position in their home." *Id.* ¶ 26.

In March, 2014, the Plaintiffs through counsel "corresponded with the President of Green Tree and the General Counsel of Safeguard, demanding an end to this conduct and threatening a claim for punitive damages if the conduct continued," stating that the conduct was "a violation of the Maine Unfair Trade Practices Act." *Id.* ¶ 29. They say the correspondence "was ignored." *Id.* ¶ 30.

In sum, the Plaintiffs maintain that Safeguard and Green Tree have jointly and severally, "violated the Plaintiffs' privacy interests, [have] trespassed on their property, [have] converted their assets, have prevented the sale and marketing of their South Portland home, have violated their statutory rights as consumers, and have intentionally caused the Plaintiffs emotional distress." *Id.* ¶ 35.

### C.    The Theories of Action Against Green Tree

The Napolitanos' Complaint consists of seven counts against Green Tree: (1) Illegal, Fraudulent and Unconscionable Conduct/Maine Unfair Trade Practices Act (MUTPA), (2) Trespass, (3) Conversion, (4) Breach of Contract, (5) Intentional Infliction of Emotional Distress (IIED), (6) Negligent Infliction of Emotional Distress (NIED), and (7) Fair Debt Collection Practices Act (FDCPA). *Id.* 1-10.

## II.   POSITIONS OF THE PARTIES

### A.    Green Tree's Motion

Green Tree contends that none of the Plaintiffs' counts states a claim upon which relief can be granted and that their Complaint against Green Tree must be dismissed in its entirety. *Def.'s Mot.* at 2.

### 1.   Count Two:  Trespass

Turning first to the trespass claim, Green Tree argues that the Plaintiffs may not as a matter of law maintain a trespass claim against it because they "consented to and authorized Green Tree to enter and secure the Property." *Id.* at 4.  It points to section 9 of the Mortgage which it maintains "authorizes Green Tree to enter, secure and repair the Property without notice to the Napolitanos upon either a default of the Mortgage or an abandonment of the Property." *Id.* at 5.  They say that the Plaintiffs "concede that they both vacated the Property and defaulted under the terms of their Mortgage," and that "[t]hese concessions are sufficient as a matter of law to bar . . . the trespass claim." *Id.*

### 2.   Counts Five and Six:  Intentional and Negligent Infliction of Emotional Distress

Regarding the intentional and negligent infliction of emotional distress claims, Green Tree says that the claims fail because (1) the Plaintiffs failed to allege any facts showing that Green Tree acted with specific intent to cause emotional distress, (2) that Green Tree was exercising a contractual right in entering the home, (3) that a mortgagor has no legal right to claim emotional distress from the initiation of a foreclosure, and (4) that the Plaintiffs have failed to identify any objective symptoms as a consequence of Green Tree's actions. *Id.* at 5-8.

### 3.   Count Three:  Conversion

7

Noting that the tort of conversion applies only to personal, not real property, Green Tree maintains that the Complaint fails to allege that Green Tree converted any personal property and Green Tree also notes that it was authorized to enter into the property under the terms of the Mortgage. *Id.* at 8-9.

### 4.      Count Seven:  Fair Debt Collection Practices Act

Green Tree states that as the current holder of the Mortgage in this case, it does not fit within the definition of "debt collector" in the FDCPA. *Id.* at 9.  Green Tree argues that "[c]reditors collecting their own debt are excluded from the statute's reach." *Id.* at 10.  Furthermore, even if the FDCPA did apply, Green Tree says that the Plaintiffs have failed to identify any Green Tree conduct that violated the FDCPA. *Id.*

### 5.      Counts One and Four:  Maine Unfair Trade Practices Act and Breach of Contract

Green Tree says that "its exercise of the right to enter was not a breach of contract as a matter of law" and that to the extent the MUTPA claim is based on the alleged wrongful entry, the claim must fail because Green Tree had the right to enter. *Id.* at 11.  Furthermore, Green Tree asserts that "the Plaintiffs have failed to identify any loss of money or Property as a result of the alleged wrongful attempt to collect a debt." *Id.* at 11.

### B.      The Napolitanos' Response

Preliminarily, the Napolitanos observe that Green Tree attached only the first Mortgage and not the subsequent modification to its motion to dismiss. *Pls.' Opp'n* at 4.  They say that "[i]f only for this reason, Green Tree's first basis for dismissal

must fail." *Id.* However, the Napolitanos attached the modification and agree that the motion "should still be decided under Rule 12(b)(6) and not Rule 56." *Id.* at 4-5.

### 1.   Count Two:  Trespass

Regarding the trespass claim, the Napolitanos say that under Maine caselaw, a mortgagee's "right of entry cannot apply . . . when the mortgagor is in possession pursuant to an agreement and the mortgagor complies with the mortgage instrument." *Id.* at 5 (citing *Cook v. Curtis*, 125 Me. 114, 131 A. 204 (1925) and *Gilman v. Wills*, 66 Me. 273 (1877). The Napolitanos point out that their Complaint alleged that they were not in default of the mortgage loan obligations as of October, 2013 and that the mortgage upon which Green Tree relies permits lender remedies only upon default. *Id.*

### 2.   Counts Five and Six:  Intentional and Negligent Infliction of Emotional Distress

Citing *Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d (Me. 1987), the Napolitanos say that their recovery of damages "turns on foreseeability of the harm caused by the tortfeasor." *Pls.' Opp'n* at 6. They say that the cases relied upon by Green Tree are summary judgment, not motion to dismiss cases, and that Green Tree's conduct, as alleged in the Complaint, is sufficient to survive dismissal. *Id.* at 5-6.

### 3.   Count Three:  Conversion

Regarding Green Tree's point about personal property, the Napolitanos observe that they claimed that Green Tree destroyed a sump pump, a washing machine, and a dishwasher, all of which qualify as personal property. *Id.* at 8. The

Napolitanos dispute Green Tree's claim that because it had the right to enter the real property, it also had the right to seize personal property without resorting to proper legal process. *Id.*

### 4.   Count Seven:  Fair Debt Collection Practices Act

The Napolitanos agree that the FDCPA does not apply in general to creditors who are collecting a debt in their own names. *Id.* at 9.  However, the Napolitanos argue that if a creditor receives an assignment or transfer of debt when the debtor is in default and if the creditor is in the business of debt collection, the creditor is deemed a "debt collector" within the meaning of the FDCPA. *Id.*  Here, the Napolitanos state that the Complaint alleges that they were in default at the time BOA transferred their mortgage to Green Tree. *Id.* (citing *Compl.* ¶ 7).  The Napolitanos disagree with Green Tree's further contention that the Complaint does not contain enough specificity. *Id.* at 10-11.

### 5.   Counts One and Four:  Maine Unfair Trade Practices Act and Breach of Contract

Regarding Green Tree's arguments on Count One, the MUTPA count, and Count Four, the breach of contract count, the Napolitanos maintain that they must fail because Green Tree's right of entry was conditioned upon a default and there was no default when Green Tree entered. *Id.* at 11.

Regarding Green Tree's contention that the Napolitanos have failed to allege a cognizable loss, the Napolitanos note that they alleged the loss of their personal property, the diminution in value of their residence due to a mold problem, the

reduction in the equity in their home, and that these damages are sufficient to state a claim under the MUTPA.  *Id.* at 12.

## III.   DISCUSSION

### A.   Legal Standard

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 7 (1st Cir. 2011) (citing FED. R. CIV. P. 12(b)(6)).  A court need not assume the truth of conclusory allegations, and the complaint must state at least a "plausible claim for relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).  However, "[n]on-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible." *Ocasio–Hernández,* 640 F.3d at 12.  A court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.* at 12-13.

In 2007, the United States Supreme Court issued *Twombly*, which emphasized the need for a plaintiff's complaint to marshal sufficient facts to demonstrate a "plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  It is noteworthy that *Twombly* is an antitrust case in which the plaintiff claimed a violation of § 1 of the Sherman Act.  *Id.* at 548.  In stressing the need for plausibility, the *Twombly* Court observed that an antitrust action "can be expensive," *id.* at 558, and the Supreme Court worried that "the threat of discovery expense will

11

push cost-conscious defendants to settle even anemic cases before reaching" the summary judgment or trial stages.  *Id.* at 559.

Two years later, in *Iqbal*, the United States Supreme Court refined the dismissal standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

556 U.S. at 678 (internal quotation marks and citations omitted).  The *Iqbal* Court suggested that courts when considering motions to dismiss could "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  Having isolated "the well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

In 2013, the First Circuit described the *Twombly* and *Iqbal* decisions as "watershed cases."  *García-Catalán v. United States*, 734 F.3d 100, 101 (1st Cir. 2013).  The "plausibility standard," the First Circuit wrote, has become "the 'new normal' in federal civil practice."  *Id.* (quoting *A.G. v. Elsevier, Inc.*, 732 F.3d 77, 78-79 (1st Cir. 2013)).  The First Circuit explained that "[t]he plausibility inquiry necessitates a two-step pavane."  *Id.* at 103 (citing *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013)).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d

220, 224 (1st Cir. 2012)).  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)).

### B.   The Mortgage and the Modification

In considering a motion to dismiss, a court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Waterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  *See also Town of Barnstable v. O'Connor*, 786 F.3d 130, 141 n.12 (1st Cir. 2015) (discussing *Waterson*).  In Green Tree's motion and in the Napolitanos' opposition, the parties attached copies of the original mortgage and the later modification.  *See Def.'s Mot.* Attach. 1 *Mortgage* (ECF No. 8) (*Mortgage*); *Pls.' Opp'n* Attach. 1 *Fannie Mae Loan Modification Agreement* (ECF No. 11) (*Modification*).  The Court is unclear from the Napolitanos' response whether they are pressing the objection to the Court's consideration of the attached documents.

 "Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Federal Rule of Civil Procedure 56." *Waterson*, 987 F.2d at 3 (citing Fed. R. Civ. P. 12(b)(6)).  At the same time, there are "narrow exceptions" for "documents the authenticity of which are not disputed by the parties; for official records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Id.* (citations omitted).

Here, as both parties attached documents to their filings, neither objected to authenticity, and the documents are central to the parties' claims and defenses, the Court concludes that both the mortgage and the modification fall within the *Waterson* exception and to the extent the Napolitanos demand that the Green Tree motion be dismissed for failure to attach a complete set of relevant documents, the Court rejects their contention as they have cured any defect in completeness. *Lemos v. Bank of Am.*, No. 15-12884-LTS, 2015 U.S. Dist. LEXIS 126732, at *2 n.1 (D. Mass. Sept. 22, 2015) ("The Court may consider the Note, Mortgage and Assignments at the Motion to Dismiss stage since it is 'integral to or explicitly relied upon in the complaint'") (citation omitted).

### C.    Count Two:  Trespass

The Court rejects Green Tree's claim that section 9 of the original mortgage granted it the unrestricted right to enter onto the Napolitanos' residence.  Maine "follows the title theory of mortgage." *Johnson v. McNeil*, 2002 ME 99, ¶ 10, 800 A.2d 702.  Under Maine law, a mortgage is "a conditional conveyance vesting the legal title in the mortgagee." *Id.* (quoting *Martel v. Bearce*, 311 A.2d 540, 543 (Me. 1973)).  But the Maine Supreme Judicial Court has clarified that "the mortgagee is not in a general sense the owner of the mortgaged estate before foreclosure." *Pettingill v. Turo*, 159 Me. 350, 359, 193 A.2d 367, 373 (1963).  "Until the mortgagee chooses to take possession, the mortgage gives him no right to do any act whereby the mortgagor may be disturbed in his enjoyment of the estate, or its value and earnings may be diminished." *Id.*  Thus, under Maine law, Green Tree did not have the unrestricted

right by virtue of its mortgage to enter onto the Napolitanos' property absent a breach of the mortgage.

Nor did the mortgage and the modification grant Green Tree such a right.  The mortgage provides in part:

> Lender or its agents may enter and inspect the Property at reasonable times.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender will give me notice prior to an interior inspection specifying such reasonable cause.

*Mortgage* ¶ 7.  This lawsuit generates a question as to whether Green Tree entered the Napolitanos' home at "reasonable times," whether Green Tree had "reasonable cause" to inspect the interior of the home, and whether Green Tree gave prior notice of the interior inspections specifying "such reasonable cause."  Green Tree's citation to paragraph 9 of the mortgage does not change this analysis.  Green Tree's right to "do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property" is triggered only (1) if the Napolitanos fail to keep their promises, (2) if someone, including Green Tree, began a legal proceeding that may significantly affect Green Tree's interest in the Napolitano residence, or (3) if the Napolitanos abandoned the property.  *Mortgage* ¶ 9.  In their Complaint, the Napolitanos have raised a factual question as to whether any of these preconditions had taken place when Green Tree entered onto the South Portland property.  In its review of the modification, the Court found no provisions that acted in derogation of these preconditions and, if Green Tree failed to comply with its own contractual provisions and simply entered the home, the Napolitanos are able to maintain a claim of trespass.

### D.     Counts Five and Six:  Intentional and Negligent Infliction of Emotional Distress

The Court rejects Green Tree's contention that the Napolitanos failed to allege any facts to support a claim that it acted with the specific intent to cause emotional distress.  The Maine Supreme Judicial Court in *Vicnire v. Ford Motor Co.*, 401 A.2d 148 (Me. 1979) set forth the applicable standard:

> We expressly recognize that a defendant may be liable for engaging in extreme and outrageous conduct and intentionally or recklessly inflicting severe mental distress on a plaintiff. Specifically, in order to recover for the intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community, (3) the actions of the defendant caused the plaintiff's emotional distress, and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it. Although severe emotional distress is usually manifested by shock, illness or other bodily harm, such objective symptomatology is not an absolute prerequisite for recovery of damages for intentional, as opposed to negligent, infliction of emotional distress. In appropriate cases, severe emotional distress may be inferred from the extreme and outrageous nature of the defendant's conduct alone.

*Id.* at 154 (internal citations and punctuation omitted).  The Maine Law Court has periodically reiterated this standard since *Vicnire*.  *See Bratton v. McDonough*, 2014 ME 64, ¶ 22, 91 A.3d 1050; *Lyman v. Huber*, 2010 ME 139, ¶ 16, 10 A.3d 707.

Here, the Napolitanos have alleged that they entered into a mortgage with BOA, that they fell behind on their BOA mortgage, that BOA assigned the mortgage to Green Tree, that they entered into a mortgage modification with BOA, and that they were able to maintain compliance with the payment schedule under the modified

16

mortgage. Nevertheless, Green Tree continued to treat them as if they were in default, sent them harassing notices, contacted them about their supposed delinquency, offered to accept a deed in lieu of foreclosure, and finally Green Tree's agent Safeguard broke into the Napolitanos' home, changed the door locks, winterized the home, dismantled a basement sump pump and allowed a previously dry basement to flood, causing the destruction of personal property and the development of mold. This accumulated conduct is sufficient in the Court's view to withstand dismissal.

Green Tree cites *Beaulieu v. Bank of America, N.A.*, 1:14-cv-00023-GZS, 2014 U.S. Dist. LEXIS 136876 (D. Me. Sept. 29, 2014) for the proposition that the District Court "rejected a claim of emotional distress based on a foreclosure, which was in fact unlawful." *Def.'s Mot.* at 7. In *Beaulieu*, the bank engaged in a "failed attempt at foreclosure" which the District Court could not "reasonably characterize[] as atrocious and utterly intolerable conduct sufficient to state an IIED claim." *Beaulieu,* 2014 U.S. Dist. LEXIS 136876, at *19. The difference here is that Green Tree never foreclosed on the Napolitanos and never engaged in any other legally sanctioned process. Instead, Green Tree entered their house and caused damage, when, according to the Napolitanos, it had no right to do so.

Green Tree also cites *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, 48 A.3d 774, *Lyman*, and *Vicnire*, none of which was decided on a motion to dismiss. *Lougee Conservancy*, 2012 ME 103, ¶ 1, 48 A.3d 774 (appeal after summary judgment); *Lyman*, 2010 ME 139, ¶ 1, 10 A.3d 707 (appeal after bench trial); *Vicnire*, 401 A.2d at 150 (appeal after jury verdict). Typically, the Maine Supreme Judicial

Court has decided these issues after trial or on motion for summary judgment, not on motions to dismiss. *See Steadman v. Pagels*, 2015 ME 122, ¶ 1, 125 A.3d 713 (appeal after bench trial); *Bratton*, 2014 ME 64, ¶ 1, 91 A.3d 1050 (appeal after summary judgment); *Curtis v. Porter*, 2001 ME 158, ¶1, 784 A.2d 18 (appeal after summary judgment). Although the Court agrees with Green Tree that the allegations about the type of emotional damage the Plaintiffs sustained are scant, the Court views a motion for summary judgment as a better vehicle to test whether the Plaintiffs are able to meet the Maine standard for purely emotional injury.

### E.    Count Three:  Conversion

The Court already addressed Green Tree's point about being authorized to enter the Napolitano home and rejects it here as well.  Regarding Green Tree's contention that a person does not commit conversion by affecting real as opposed to personal property, the Complaint alleges that Green Tree damaged the Napolitanos' personal as well as real property.  In *Allen v. Bicknell*, 36 Me. 436 (1853), the Maine Law Court concluded that a mortgagee's right to take possession includes the obligation to carefully remove the mortgagor's personal property.  *Id.* at 439; *see also* JACK H. SIMMONS, DONALD N. ZILLMAN & DAVID D. GREGORY, MAINE TORT LAW § 6.05 (2004 Ed.).  This Count survives dismissal.

### F.    Count Seven:  Fair Debt Collection Practices Act

To maintain a claim under the FDCPA, the plaintiff must demonstrate among other things that the defendant is a "debt collector" within the meaning of the statute. *Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349, 356 (D. Mass. 2008).  Green

Tree maintains that the FDCPA does not apply to it because it is not a "debt collector." *Def.'s Mot.* at 9-10.   Green Tree argues that once the BOA assignment was made, Green Tree was collecting its own debt. *Id.* at 10.   "Creditors collecting on their own accounts are generally excluded from the statute's reach." *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 41 (1st Cir. 2010) (citing 15 U.S.C. § 1692a(6)(F)(ii)).

Quoting 15 U.S.C. § 1692a(6)(F)(iii), the Napolitanos respond that the statute creates an exception from the definition of debt collector for an entity like a mortgage servicer that collects a debt "not in default at the time it was obtained by such person." *Pl.'s Opp'n* at 9.   The Napolitanos are correct.   In *Schlosser v. Fairbanks Capital Corporation* the Seventh Circuit explained:

> If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debts for collection, it is acting more like a debt collector.

*Schlosser v. Fairbanks Capital Corporation*, 323 F.3d 534, 536 (7th Cir. 2003).   Thus, the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Id.*

In their Complaint, the Napolitanos alleged:

> Upon their default, the Plaintiffs' mortgage lender, Bank of America, N.A., assigned its right to foreclose on its mortgage and otherwise collect on any debt owed to the Bank's servicing agent, Green Tree, although no foreclosure proceeding was instituted in a Maine Court.

*Compl.* ¶ 7.   The Plaintiffs have alleged sufficient facts to place Green Tree within the definition of "debt collector" under the FDCPA. *McCusker v. Ocwen Loan Servs., LLC*, No. 14-13663-MGM, 2015 U.S. Dist. LEXIS 97593, at *5-6 (D. Mass. July 27,

2015) ("Mortgage servicing companies qualify as debt collectors under the statute if the mortgage at issue was in default, but not being foreclosed upon, at the time they began servicing the loan").

Green Tree also contends that the higher pleading standards of Rule 9 apply to the Napolitanos' FDCPA claim and that the Napolitanos have failed to meet those higher pleading standards by making conclusory allegations which merely track the terms of the statute.[2]  *Def.'s Mot.* at 10.  The Court was unable to locate any authority for the proposition that the heightened pleading standards of Rule 9(b) apply to claims under the FDCPA.  To the contrary, in assessing motions to dismiss lawsuits brought under the FDCPA, courts have proceeded under the analysis set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See Cunha v. LVNV Funding, LLC*, No. 13-11418-MLW, 2015 U.S. Dist. LEXIS 132911, at *4-5 (D. Mass. Sept. 30, 2015).  Finally, as is evidenced by the Court's description of the allegations in the Complaint, the Court disagrees with Green Tree that the Napolitanos have merely recited the language of the statute in their Complaint.

### G.   Counts One and Four:  Maine Unfair Trade Practices Act and Breach of Contract

---

[2]      In support of its contentions, Green Tree cited two opinions in the case of *Wright v. Specialized Loan Servicing LLC* from the Eastern District of California.  Green Tree cites a February 25, 2010 opinion under *Wright v. Specialized Load Servicing, LLC*, 2010 WL 71255, at *7 (E.D. Cal. Feb. 25, 2010).  Using Green Tree's citation, the Court was unable to locate this case.  The Court was able to locate  other opinions in the *Wright* case, all of which used the Rule 8(a) pleading standard, not a Rule 9(b) standard, in assessing a motion to dismiss a FDCPA claim.  *Wright*, No. 1:13-cv-00899, 2013 U.S. Dist. LEXIS, at *1-4 (E.D. Cal. Jun. 19, 2013); *Wright*, No. 14-cv-01587-JLT, 2014 WL 5308633, at *1-2 (E.D. Cal. Oct. 16, 2014); *Wright*, 1:15-cv-0287-JLT, 2015 U.S. Dist. LEXIS 24269, at *1-4 (E.D. Cal. Feb. 27, 2015).

In urging the dismissal of the breach of contract count, Green Tree states that it had the right to enter the premises and therefore cannot be held responsible for exercising a contractual right. But as the Court has noted, Green Tree's right to enter the Napolitano home was much more circumscribed than Green Tree acknowledges, and the Napolitanos have set forth sufficient facts to maintain a claim that Green Tree breached the terms of the contract.

Green Tree also maintains that the Napolitanos failed to allege any damage and therefore the MUTPA claim should be dismissed. *Def.'s Mot.* at 11. The MUTPA requires that the plaintiff sustain a "loss of money or property, real or personal" as a result of a prohibited act. 5 M.R.S. § 213(1). Green Tree cites *Fogg v. Ocwen Loan Servicing, LLC*, No. 2:14-cv-454-GZS, 2015 U.S. Dist. LEXIS 45642, at *11-13 (D. Me. Apr. 8, 2015) for the proposition that the failure to allege any loss of money or property is fatal to a MUTPA claim. *Def.'s Mot.* at 11. But the *Fogg* Court addressed a case where the only loss of money or property was attorney's fees and, not surprisingly, the Court concluded that the plaintiffs could not bootstrap themselves into the MUTPA statute by expending attorney's fees to bring a MUTPA claim. *Fogg*, 2015 U.S. Dist. LEXIS 45642, at *11-13. Here, the Napolitanos have claimed specific damage to their real and personal property sufficient to come within the protection of the MUTPA.

## IV.   CONCLUSION

The Court DENIES Defendant Green Tree Servicing, LLC's Motion to Dismiss (ECF No. 8).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2016